NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3284
_____

UNITED STATES OF AMERICA

v.

MICHAEL SCRIPPS,
                                        Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 2-12-cr-00298-001)
District Judge: Honorable Legrome D. Davis
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 8, 2014

Before: VANASKIE, COWEN, and VAN ANTWERPEN, *Circuit Judges*

(Filed: January 12, 2015)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge.*

A jury convicted Appellant Michael Scripps on seven counts of wire fraud, 18

U.S.C. § 1343, arising from his scheme to defraud his mother and autistic uncle out of

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

millions of dollars from the family's publishing fortune. Appellant now challenges the District Court's supplemental jury instructions, the impartiality of members of the prosecution team, the exclusion of expert testimony, and the reasonableness of his sentence. We see no error in the handling of any of these issues and will affirm the District Court's judgment.

I.

In the late nineteenth and early twentieth centuries, Edward Willis Scripps amassed a fortune in the publishing industry. Siblings Melissa and David Scripps were heirs to this fortune; Melissa's son, the Appellant, was also the beneficiary of a substantial trust fund.

As established at trial, Appellant partnered with his college friend Richard Gleeson to defraud Melissa and David of their share of the Scripps fortune. Gleeson worked as a financial advisor for Merrill Lynch in Media, Pennsylvania. In 2002, Appellant convinced his mother and uncle to transfer their money to Merrill Lynch. With Gleeson's help, Appellant began secretly and fraudulently transferring millions of dollars into his own account from David's and Melissa's accounts. Appellant also tricked his mother and uncle into borrowing hundreds of thousands of dollars against their Michigan residence and funneled the borrowed money to himself.

Melissa and David discovered Appellant's fraud in 2006. In 2008, Merrill Lynch paid David and Melissa $5.875 million to release their claims against the company on condition that they report the fraud to the United States Attorney's Office (USAO) for the Eastern District of Pennsylvania (EDPA). Attorney Zane Memeger, now the EDPA

United States Attorney, but then in private practice, represented Merrill Lynch in the matter and accompanied David and Melissa to Philadelphia when they reported the crime.

Memeger became the United States Attorney while the case was still being investigated, and he sought to recuse himself. The Justice Department assigned the case to the USAO for the District of New Jersey and its United States Attorney, Paul Fishman. The Justice Department's Notice of Recusal left it to Fishman's discretion whether Assistant United States Attorneys (AUSAs) from the EDPA could continue working on the case as Special Attorneys under Fishman's supervision. Pursuant to that discretion, Fishman allowed EDPA AUSA Terri Marinari to continue as lead counsel.

In June 2012, a grand jury indicted Appellant on seven counts of wire fraud. Appellant moved to dismiss the indictment because of Memeger's conflict of interest. In October 2012 the District Court denied the motion, finding that Memeger had properly recused himself in accordance with the United States Attorneys' Manual and the Department of Justice's guidance.

Appellant was tried in April of 2013. The Government called fifteen witnesses, including David and Melissa Scripps, Richard Gleeson, and several Merrill Lynch employees. Appellant called several witnesses, including an expert on financial reporting, but the District Court limited the scope of the expert's testimony. After retiring to deliberate, the jury repeatedly asked for clarification on the concept of reasonable doubt. The District Court provided supplemental instructions, to which Appellant objected. The District Court overruled the objections, and the jury found

3

Appellant guilty on all counts.  The District Court sentenced Appellant to 108 months'

imprisonment, the maximum period of incarceration within the advisory Guidelines

range.  This appeal followed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III.

Appellant argues that (1) the District Court's supplemental jury instructions

understated the prosecution's burden of proof and undermined the core defense

argument; (2) Memeger's conflict should have been imputed to all AUSAs assigned to

his office; (3) the exclusion of Appellant's expert testimony was improper; (4)

Appellant's sentence was procedurally and substantively unreasonable; and (5) taken

together, these errors rise to the level of constitutional error.  We address each argument

in turn.

## A.

To establish Appellant's guilt at trial under 18 U.S.C. § 1343, the Government was

required to prove (1) knowing and willful participation in a scheme or artifice to defraud,

(2) specific intent to defraud, and (3) the use of interstate wire communications in

furtherance of the scheme.  *United States v. Andrews*, 681 F.3d 509, 528 (3d Cir. 2012).

The defense did not contest that Appellant made seven wire transfers out of David

Scripps's account.  Thus, the primary question at trial was whether Appellant participated

in a scheme to defraud with specific intent to defraud.  Appellant's defense was that his

mother, Melissa, had irresponsibly dissipated her substantial fortune, had approved of her son transferring family members' money into his own account, and had alleged fraud only as a condition of her multimillion-dollar settlement with Merrill Lynch.

At trial, the jury repeatedly requested additional instructions on the concept of reasonable doubt. From the bench, the District Court noted that the jury was obligated to determine beyond a reasonable doubt whether a scheme to defraud existed, and then to apply the same standard to determine whether each of the seven alleged fraudulent wire transactions out of David Scripps's bank account occurred. The District Court then instructed the jury:

> The – obviously, the testimony from Melissa Scripps concern[s] the presence or non-presence of a scheme in other factual circumstances. But as I read this indictment, you're not asked to adjudicate anything in these seven counts about Melissa. So the government is obligated to prove, beyond a reasonable doubt, the charges concerning David Scripps.
> . . .
> I mean, we're not judging, for example, whether we like any of the witnesses. We are not judging their lifestyle. We are not judging whether they've squandered in a profoundly sad way their time. That's not our place. That's not our duty; right? We're judging conduct. And, at the end of the day, as my mother said to me, and I love my mother, she says Legrome, you're responsible for what you do; right?

(App. at 516-517.)

Appellant contends that these instructions downplayed the need for the jury to find intent to defraud and a scheme to defraud, and instead focused the jury solely on the uncontroverted wire transfers. Moreover, the defense theory was that Melissa's lifestyle diminished her credibility as a witness, and Appellant contends that the instruction not to

5

judge Melissa's lifestyle undermined this argument and encroached on the jury's role as factfinder. Finally, Appellant challenges the District Court judge's invocation of his own mother in a case focused on a deeply troubled mother/son relationship.

We review the District Court's supplemental jury instructions in the context of the overall charge for an abuse of discretion — whether the instruction was "arbitrary, fanciful or clearly unreasonable." *United States v. Jackson*, 443 F.3d 293, 297 (3d Cir. 2006) (quoting *Stich v. United States*, 730 F.2d 115, 118 (3d Cir. 1984)). Within this context, we find that the District Court properly instructed the jury and did not abuse its discretion. The supplemental instructions clarified that the jury must find the existence of a scheme to defraud beyond a reasonable doubt and explicitly noted that Melissa Scripps's testimony related to the existence of such a scheme. The District Court's instruction not to judge Melissa Scripps's lifestyle focused the jury's attention on the charged conduct at issue in the trial, but also reserved for the jury the question of her credibility. Finally, the fact that this case involved the relationship between a mother and her son did not render the District Judge's references to lessons learned from his mother inappropriate.

In sum, the District Court's supplemental jury instructions were not arbitrary, fanciful, or clearly unreasonable. Accordingly, we find no abuse of discretion.

B.

Appellant asserts that because the current United States Attorney for the EDPA worked on this matter in private practice, the entire office should have been precluded from assisting in the prosecution of this case for two reasons. First, Appellant believes

6

that the Notice of Recusal from the Department of Justice required the entire USAO for the Eastern District to recuse itself. Second, he argues that the failure of the EDPA AUSAs to recuse themselves constituted structural error that undermined confidence in the proceeding. We review the District Court's refusal to dismiss Appellant's indictment for abuse of discretion. *United States v. Bryant*, 655 F.3d 232, 238 (3d Cir. 2011).

We find Appellant's arguments entirely unsupported. The Notice of Recusal assigned the case to Paul Fishman, the United States Attorney for the District of New Jersey, but explicitly empowered Fishman to allow attorneys from Memeger's office to prosecute the case under his supervision. That is exactly what happened here. Nor did *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), require recusal. In that case, a plurality of the Supreme Court held that an attorney cannot simultaneously represent a private client in a civil matter and prosecute his adversary for contempt arising from that litigation. *Id.* at 809. Here, by contrast, Memeger had ceased representing Merrill Lynch when he assumed office, and he played no role in the prosecution.

Accordingly, the District Court did not abuse its discretion in rejecting Appellant's motion to dismiss his indictment.

### C.

Appellant asserts that the District Court improperly excluded portions of defense expert Marico Kohn's testimony under Federal Rule of Evidence 702. Under that Rule, which "has a liberal policy of admissibility[,]" an expert witness must qualify as an expert and proffer relevant and reliable testimony. *Pineda v. Ford Motor Co.*, 520 F.3d

7

237, 243 (3d Cir. 2008) (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). We review the District Court's decision for abuse of discretion. *Id.*

Appellant called Kohn as an expert to describe how Merrill Lynch typically reported transactions to account holders, and to establish that Melissa and David Scripps had spent money profligately both before and during Appellant's scheme. According to Appellant, this testimony would have supported the defense theory that no fraud occurred because Melissa knew or should have known about her son's transactions. The District Court, however, noted the unclear bases for the testimony, and determined that information about the Scripps's spending levels before the fraud would distract the jury from the question of whether the fraud occurred. The District Court thus allowed Kohn to testify only as to Merrill Lynch's reporting procedures at the time of the fraud.

This was not an abuse of discretion. Melissa Scripps's testimony had already established her history of extravagant spending, and the District Court was properly concerned that the additional testimony lacked a reliable foundation and could focus the jury on Melissa's lifestyle rather than on Appellant's legal culpability. Thus, we find that the District Court acted within its discretion in excluding portions of Kohn's expert testimony.

D.

After trial, the District Court calculated an advisory Guidelines range of 87 to 108 months and sentenced Appellant to 108 months. Appellant asserts that the District Court failed to consider his mitigation arguments and rendered an unreasonable sentence. We

8

review the procedural and substantive reasonableness of Appellant's sentence for abuse of discretion.  *See United States v. Maurer*, 639 F.3d 72, 77 (3d Cir. 2011).

We first "ensure that the district court committed no significant procedural error in arriving at its decision."  *Id.* (quoting *United States v. Wise*, 515 F.3d 207, 217–18 (3d Cir. 2008)).  Appellant suggests that the District Court ignored his lack of criminal history, his statistically low risk of recidivism, and the fact that he started a family after his mother discovered the fraud.  The record, however, demonstrates that the District Court carefully considered each of Appellant's mitigation arguments at sentencing, as required under 18 U.S.C. § 3553(a).  (App. 531–621.)  Therefore, we find no abuse of discretion or procedural error in this determination.

Second, we review the substantive reasonableness of Appellant's sentence. *Maurer*, 639 F.3d at 77.  After considering Appellant's arguments for mitigation, the District Court concluded that Appellant deserved a substantial sentence because he had stolen money from his vulnerable, autistic uncle, had entirely failed to take responsibility for his actions, and showed no remorse.  (App. at 618–19.)  It selected a sentence at the top of the advisory Guidelines range because it found Appellant's criminal behavior egregious, and determined that a substantial sentence would deter similar fraud in the future.  (App. at 618.)  We conclude that a 108 month sentence falls within the range of reasonable sentences in this case, and accordingly we will affirm.[1]

---

[1] Appellant also protests that the Merrill Lynch employees who were separately prosecuted in connection with this matter received substantially shorter sentences than Appellant.  Unlike Appellant, however, those employees took responsibility for their crimes and cooperated with the Government.  *United States v. King*, 604 F.3d 125, 145

E.

Finally, Appellant claims that the cumulative effect of the District Court's errors substantially prejudiced Appellant, and resulted in reversible constitutional error. *United States v. Hill*, 976 F.2d 132, 145 (3d Cir. 1992). Because we have found no individual error committed by the District Court, we reject this contention.

IV.

For the foregoing reasons, we will affirm the District Court's judgment entered on July 17, 2013.

---

(3d Cir. 2010). Accordingly, we conclude that the discrepancies were warranted under 18 U.S.C. § 3553(a)(6).